WISENER & BROWN, Executors, *v.* MAUPIN and WIFE, *et al.*

1. WILLS. *Issue* devisavit vel non. *Jurisdiction of Circuit Court. Practice.* The Circuit Court has jurisdiction to try an issue of *devisavit vel non* when the probate has been set aside, and the case certified to that Court. If the original bill be not sent up under § 2173 of the Code, the Circuit Court will not be deprived of jurisdiction, but may compel the County Court by *certiorari* or *mandamus* to do its duty. The jurisdiction of a Circuit Court of an issue of *devisavit vel non* is not appellate but original.

Case cited: Patton *v.* Allison, 7 Hum., 328.

Code cited: § 2173.

2. SAME. *Same. Executors. Duty of. Estoppel.* Upon an issue *devisavit vel non* the executors should have the original will in Court for probate, and failure to do so will not entitle them to prevent the trial by their own default, and if they present a copy with which they are satisfied, they are estopped from objecting to a contest made upon the same.

3. SAME. *Same. Jurisdiction of Chancery Court.* The Chancery Court has jurisdiction to set up a supposed or destroyed will, upon proof of its execution and contents, while the Circuit Court may try an issue *devisavit vel non* on a copy of the original, its correctness being acknowledged.

Cases cited: Buchanan *v.* Mattock, 8 Hum., 390.

4. SAME. *Same. Testamentary capacity.* The question of testamentary capacity is, "whether the testator, at the time of making the will, knew and comprehended what he was doing." A will is not valid unless the testator intends of his own free will to make such a disposition, and is capable of knowing what he is doing and understanding to whom he is giving his property, and in what proportion, and whom he is depriving of it.

Cases cited: Nowling, ex'r, *v.* Nowling, 2 Sneed, 634; 39 Penn., 191; 11 Mich., 459; Redfield, Vol. 1, 132.

5. SAME. *Same. Evidence. Testator's knowledge of contents.* Where the will was not read to the testator, and he was illiterate, it must be shown that he knew its contents, and this may be shown by circumstances, and where the testator was old, illiterate and diseased, full and satisfactory proof that he knew the contents of the will is required.

6. DEPOSITION. *Filed in proper time. Clerk's neglect to endorse filing not to prejudice. When.* When the Court is satisfied that a deposition was in fact filed within the proper time, the fact that the Clerk failed to make the proper endorsement on it will not be held to prejudice the interests of the party to be benefited by such deposition.

7. SAME. *Same. Evidence. Provisions of the will.* A testator who is qualified may make his will as he pleases, though he disinherits his children. But when the will is attacked upon the ground of undue influence, the provisions of the will may be looked to as evidence whether it was made freely and rationally or under undue restraint.

Cases cited: Redfield, Vol. 1, 520-1, 78, 374, § 14, 525, 517, Note 22; Law Register 6th, 80.

8. WITNESS NOT EXEMPT FROM RULE, THOUGH PARTY TO SUIT. *Exception in favor of employed counsel.* Though a witness be a party to a suit, he will be equally subject to be put under the rule with other witnesses, and the only exception made is in favor of employed counsel.

9. SAME. *Same. Evidence. Wife of testator incompetent witness. When.* Where the will is attacked upon the ground of fraud or undue influence exerted by the wife while she was married to testator, or upon the ground of unsoundness of mind or capacity to make a will; she is equally incompetent in both cases.

10. WITNESS. *Testimony of as to soundness of testator's mind.* After a witness had given the facts of his knowledge of and acquaintance with the testator, he was asked: " From these facts, state whether, in your opinion, he was of sound mind and disposing memory ? " The answer is: " He was not of sound mind and disposing memory." The Court allowed the answer so far as the statement that he " was not of

sound mind," but refused to allow and sustained the exception as to the question of "disposing memory."
*Held*, There was no error in this.
Cases cited : Gilesan *v.* Gilesan, 9 Yer., 332 ; Norton *v.* Moore, 3 Head, 482 ; Clay *v.* Clay, 2 Iredell, 78.

FROM WILLIAMSON.

Appeal from the Circuit Court.   WM. P. MARTIN, Judge.

JOHN B. McEWIN, DAVID CAMPBELL and WISENER & SON for Wisener & Brown.

E. COOPER, S. H. WHITTHORNE, BUCHANAN & KEEBLE, and WARDER for Maupin and wife *et al.*

FREEMAN, J., delivered the opinion of the Court.

This case involves an issue of *devisavit vel non*, on the validity of the will of Benjamin Brown, who died in Bedford County about the year 1857.

The case ·was transferred from Bedford to the County of Williamson, where a trial was had and a verdict of a jury, finding that it was not the will of Benjamin Brown, which the Court refused to set aside, from which there is an appeal in error to this Court.

The estate being a considerable one—worth perhaps between fifty and seventy-five thousand dollars—the case is pressed upon our attention with great earnestness and zeal by counsel on both sides.   Numerous

errors are assigned on the facts of the Record for reversal, which we proceed to dispose of.

First, it is insisted that the Court erred in not sustaining the motion of the plaintiffs in the Record (the executors of the will) to strike *the case from the docket* for want of jurisdiction on the part of the Circuit Court of Bedford County, made at the December term, 1865, of said Court, but made on the 6th of January, 1870, it being a part of said term.

It appears from the Record that in July, 1869, Robert Brown, Robert C. Maupin and wife (Eliza Jane—formerly Eliza Jane Brown) being the only children of Solomon Brown, deceased, who was a son of testator (Benjamin Brown), and consequently his grand-children, filed their petition in the County Court of Bedford County, to set aside the probate of the will in common form, and have it re-probated in solemn form in the Circuit Court, on an issue of *devisavit vel non.* This petition alleges the death of Benjamin Brown in 1857; that he made and published a paper writing purporting to be his last will and testament, which had been presented to the County Court of Bedford in 1857, by W. H. Wisener and William Brown, executors, and proved in common form. The petition states further that the petitioners were minors at the date of probate of the will; had no notice of the probate; had only a short time before this come of age; had been cut off from any share in the estate except a mere pittance; and then alleges that the paper was not the last will and

testament of Benjamin Brown, was obtained by fraud
and undue influence, and that he was *non compos
mentis*—an imbecile—at the time of its execution.
The petition concludes with the proper prayer, and
adds, "a copy of the will is herewith tendered."

This petition was answered by the · executors, in
which they admit the making of his will, its probate
in common form, at the June term, 1857, but insist
that he was of sound mind; deny the fraud and
undue influence, and then insist that the petitioners
have no ground on which to ask that the probate in
common form be set aside, or to an issue of *devisa-
vit vel non.* The Court made an order setting aside
the probate in common form, and ordered that the
cause be certified to the Circuit Court of Bedford for
a trial on an issue of *devisavit vel non,* on the parties
giving the security required by law.

The transcript of these proceedings was certified to
the Circuit Court and duly filed. On the 23d day
of December, 1869, on motion of defendants, an order
is made, allowing them to take the depositions of
various parties in this case. On the 6th of Janu-
ary, 1870, of the same term, the plaintiffs (the exec-
utors, by attorney), moved the Court to strike this
cause from the docket, for want of jurisdiction,
which was overruled by the Court. Thereupon the
contestants moved the Court for notice to issue to the
legatees to come into Court and enter into bond, as
required by law, and then that the executors be com-
pelled to prove the alleged will of Benjamin Brown

in solemn form, and make up the issue of *devisavit vel non,* and thereupon the executors moved the Court for a *certiorari* to the County Court Clerk, to certify the will and records probated in this cause, which last order was made.    It appearing that no issue had been made up, and a number of witnesses being in attendance, their costs were ordered to be taxed to the parties summoning them.

It will be seen that the Court took no action on the motion of contestants to compel the executors to prove the will.    The motion was made, but the Court made no order on it, no doubt on account of the fact that on the making of this motion the executors immediately moved for a *certiorari* to the County Court Clerk to send up the will, on which the issue was to be made, so that the after production of the paper purporting to be a copy was voluntary on the part of the executors.

The counsel of the executors insist there was error in the Court refusing to strike the cause from the docket on their motion, for want of jurisdiction. The question naturally presents itself, on what grounds could such action of the Court have been justified at that stage of the proceedings?    It is clear that the Court had jurisdiction of the subject matter and of the parties—that is, to try an issue of *devisavit vel non,* when the probate in common form had been set aside, and the cause certified to the Circuit Court for trial. But it is said the original will was not sent up from

the County Court, as provided for by Section 2173 of the Code. That section is as follows: "Where the validity of any last will and testament, written or nuncupative, is contested, the County Court shall cause the fact to be certified to the Circuit Court, and send to said Court the original will, and shall require the contestants to enter into bond with security in the penalty of five hundred dollars, payable to the executor mentioned in the will, conditioned for the faithful prosecution of the suit," etc.

It is obvious this section contains only directions to the County Court, which the County Court is bound to obey, and which, if neglected or refused by them, might be enforced by the Circuit Court by virtue of its supervisory power over inferior tribunals, either by *certiorari* for a complete record, or in a proper case by *mandamus*; but how such failure on the part of the County Court or its Clerk could be a matter affecting and defeating the jurisdiction of the Circuit Court to make up and try an issue of *devisavit vel non*, we are not able to see. It would be conceded, we suppose, that the Court properly made the order at the request of the executors, granting a *certiorari* to compel the County Clerk to certify the will and proceedings and send them to the Circuit Court. If this is correct, on what principles can the authority of the Court rest to make such order, except that the case was in that Court, and the Court had jurisdiction to try it, and therefore could compel the other

Court to furnish the papers required by law to be furnished, in order to the making up of the issue, and further proceeding with the case.

It was the duty of the executors to propound the will in the first place in the County Court, and then to maintain it on the contest in the Circuit Court. 7 Hum., 95. And he is the formal and necessary party against whom the suit is brought, to set aside the will and have it re-probated in solemn form. 11 Hum., 487.

This being true, it follows necessarily that it was the duty of the executors to have the original in Court for probate, and if they failed to do so, they could not ask the Court to strike the case from the docket and prevent the trial of the case on the issue of *devisavit vel non*, by their own default. If the failure was that of the County Court Clerk, or the Court, they had their remedy, as we have stated. The parties, then, whose duty it was to propound the will for re-probate, the probate in common form having been set aside, are the parties who come and move the Court to strike the case from the docket, for want of jurisdiction, and now allege that the Court erred in not allowing their motion, because, they say, the original paper, which it was their duty to prove, or at any rate their duty to affirm and maintain as the will of their testator, had not been sent up with the transcript. We can see no principle on which such a motion could have been sustained. We must

try the action of the Court by the case as it stood before him when the motion was made and acted on, and at that time we think it clear the only motion plaintiffs could properly have made was the one they did make for a *certiorari*, which was ordered by the Court to bring up the will and the proceedings on file from the Court below.

It is urged, however, that the sections of the Code do not provide for the case, and require the original will to be sent up, and that Section 2179 provides that if the original be lost or mislaid so that it can not be produced on the trial of the issue, but the paper has been copied into the pleadings, or spread on the minutes of the Court, the Court is then authorized to proceed with the trial as if the original were present. It is conceded that the first section of the Code does require the County Court to send up the original, and it is also conceded that the last section quoted does not provide for this particular case, but for a different one, where the paper has been copied in the pleadings or on the Record in the Circuit Court.

But because this has no application to the particular case in hand, it does not follow that the mere absence of the original will from the Record sent up by the County Court, and the sending of a copy instead is a jurisdictional fact, and that the Court should at once strike the case from the docket for this cause, but only that the party whose duty it was to

prove the paper, or the Court on its own motion should have taken proper steps to supply the deficiency.

In the case of *Allen* v. *Allen,* 2 Tenn. R. (Coop. Ed.), 173, an exception seems to have been taken to the jurisdiction of the Circuit Court on this very ground, that the statute had given no power to admit to probate a copy of a will. The Court say: "We deem it sufficient answer to that objection to say that the Court had jurisdiction of the subject matter, and the parties were competent to agree on the mode of proceeding, they having agreed to try on the copy in that case, but if the argument insisted on here be correct, and there is such a want of jurisdiction as authorized the Court to dismiss the case, or rather strike it from the docket, then no consent could give jurisdiction to the Court, the *law* having given no such jurisdiction. But the Court decide that the Circuit Court did have jurisdiction of the subject matter, and that consent of the parties waived the irregularity of want of the original.

It is true the Court add that the decision in that case could only affect the parties to it. By the Act of 1851–2 (Code, §§ 2174, 2175), on notice to the legatees or devisees, being adults, they must come in and be made parties, and give bond for prosecution of the suit, and on failure or refusal the will is held for naught, and the property is distributed as in cases of intestacy, so that there can be no difficulty in binding all adult parties by the proceeding, even if

the statement of the Court in the above case be correct.

In looking further into the proceedings, it is clear that the executors and parties are bound by an estoppel, or at any rate, whether by a clear estoppel, are certainly bound by assent to the jurisdiction, for at the April term, 1870, the executors tender the copy of the will and codicil on which the issue was made up, with the affidavit of the former Clerk of the County Court to the loss of the original by burning the court-house during the war, and also the affidavit of Wisener and Brown (the executors) to the fact, and also the fact that the copy is a true copy, and show the fact to be so, because it was an officially certified copy by the Clerk, and issued to the executors on the 10th of June, 1867, a few days after its probate. And the executors then and there tender · an issue on said paper, as follows: "And said executors say that said paper writing, of which the foregoing is a copy, is (or are) the last will and testament of Benjamin Brown, deceased, and this they are ready to verify." And thereupon the defendants reply and say, "the original alleged to be the last will and testament of Benjamin Brown, deceased, of which the foregoing is a *true copy*, is not the last will and testament of Benjamin Brown," and thus the issue is made up.

Now it might be far better maintained, we think, that the contestants might have insisted on the want of the original rather than the executors, for, as the

probate of the will had been set aside in the County Court, they might with some plausibility (if technical grounds are to be insisted on in such a case) have said to the executors, you are required now to prove the will of Benjamin Brown, under which you claim authority to act, and we require that you shall comply with the requirement of the law strictly, and prove the original—not a copy. They chose to make no objection, but as the executors had presented a copy of the original, with which they were satisfied, and had affirmed that the original, of which this was a copy, was the will of their testator, and thus conceded its correctness and sought the action of the Court upon the issue thus tendered, they can not now come and say the Court has erred in allowing the contest to be made on their own ground. Much of the error of the argument on this question grows out of the assumption, that the jurisdiction of the Circuit Court is appellate in cases like the present, but it is well settled that this is not correct, but that it is original. See *Patton* v. *Allison,* 7 Hum., 228.

The argument that this paper was perhaps a copy of the paper, we do not think was well taken. First, because the affidavit of Thompson, former Clerk, and of Wisener and Brown, executors, distinctly affirm that it is a copy of the will, and so the executors affirm in the issue tendered, and so the contestants affirm in their reply. It does not lie in the mouth of these parties to this record to say that this is not a copy of the original, nor can we so affirm, without dis-

carding their solemn affirmation under oath. The radical error of this argument is, that it goes on the idea that the paper is introduced as evidence, and therefore the best evidence is to be produced. No one is objecting to the correctness of the copy, or requiring the production of the original as the best evidence of the contents of the paper, but the objection is, that the Court had no jurisdiction of the cause, because only a copy is produced with the papers from the County Court, the implied admission in the objection being that the copy is correct.

It is insisted, however, that the paper was lost, and the Court of Chancery alone had jurisdiction to set up the will. The case of *Buchanan* v. *Matlock*, 8 Hump., 390, is cited for this position. It will be seen from an examination of that case that the question discussed simply whether a Court of Chancery had the power, or the County Court, to set up a suppressed or destroyed will, upon proof of its execution and of its contents. This jurisdiction is maintained unanswerably by the opinion of Judge Turley in that case; but that does not touch the question as to whether a Circuit Court may not try an issue of *devisavit vel non*, on a copy of the original, the correctness of the copy not being in dispute, but acknowledged. We may add, that it seems to us a sacrifice of the ends of justice to a mere form to require the parties to go through a tedious suit in a Court of Chancery to establish the contents of a destroyed will, when they already have a copy as accurate as the one would be when thus estab-

Wisener & Brown, Executors, *v.* Maupin and Wife *et al.*

lished, the correctness of which is not denied. At the end of the litigation there would but be a copy at last, and probably the decree establishing the will would be based on proof of the correctness of the very copy now before the Court.

In conclusion we need but add that we can not see how his Honor can be put in error for failing to strike the case from the docket for want of jurisdiction, for want of a properly authenticated copy, or proper evidence of the loss of the original, even if this was material, when the copies and affidavits were not presented to the Court until the next term after the motion had been made. His action can only be judged by the facts before him at the time.

We have given more elaboration to the discussion than it seems to us to demand, because it has been urgently pressed on us by able counsel.

We therefore conclude there was no error in the action of the Court on this point.

The next error assigned is, that on transfer of the cause to Williamson, it seems a large number of depositions were taken to be read on the trial on the 7th of March, 1871. The plaintiffs excepted to the depositions before the cause was taken up, on the ground that the depositions had not been marked filed by the Clerk, as required by Section 3867 of the Code. The Court sustained the objection, but on the Clerk of the Court making an entry on the depositions, showing that they were handed into the office with the plaintiffs' depositions, November 23d, 1870,

but he had failed to make the entry on them at the time, the Court overruled the exceptions. There is no reversible error in this, if any at all. The depositions were in fact filed in ample time, and the fact that the Clerk failed to make the proper endorsement on them ought not to be held to prejudice the party interested in them.

The parties excepting could not have been prejudiced by the action of the Court, as they had cross-examined the witnesses, and no complaint is made of want of notice of their taking.

The next error assigned is, that plaintiffs having sworn William Brown, one of the executors, as a witness, together with Henry Brown and Mrs. Briantz (formerly Mrs. Brown), who were legatees, they were, on application of defendants, affidavit being waived, put under the rule and not allowed to hear the testimony given in the cause. The Court was asked in its discretion to allow these parties to remain and be exempt from the rule, on the ground that it was necessary they should be present with counsel during the trial.

In the case of *Rainwater* v. *Elmore*, 1 Heisk., 364, we held that it was the legal right of either party to a case before a court and jury, upon good cause shown by affidavit, to have all the witnesses against him kept out of hearing of those being examined, and apart from them after they have been examined, so that they shall not hear or know the testimony already given. We think this a sound rule, and one

Wisener & Brown, Executors, *v.* Maupin and Wife *et al.*

we would not be willing to modify. Since parties are made competent as witnesses under our statutes, we think the reason of the rule applies with equal, if not more, force to their case than to the disinterested witness, the object being to prevent the witnesses with feelings interested from being prepared to meet the statements of witnesses already made, and to compel them to rely on their own memory for the accuracy of their statements, without being warped or influenced in their statements by what they have already heard deposed. But little inconvenience can arise from this, as prudent counsel will always be informed of the testimony to be given on their own side of the case, in advance of the trial. At any rate we do not see as much inconvenience attending the rule, as danger on the other hand of tainting the testimony which may be given by parties in interest, after hearing all that has been testified against their case by the witnesses of their opponents. We can see that no great inconvenience was felt by the counsel in this case, as Mr. Wisener, one of the executors, seems not to have been placed under the rule, by the courtesy of his brethren of the bar, and we think the case of counsel is proper exception to the rule, arising from necessity of his being in court.

The action of the Court in admitting, or rather striking out certain parts of answers and questions in depositions, and permitting balance of the answer to be read to the jury, is excepted to. In other words, to use the language of the bill of exceptions, " the

Court struck out of the deposition so much of the question as the Court deemed illegal, as well as so much of answer of witness as was deemed illegal, so as to make the question and answer agree. As to what was in the question simply, it can be of no special importance, as it is the objectionable matter in most, if not all, cases of objection to testimony. One of these questions and answer will serve to illustrate the point of the objection. After the witness had given the facts of his knowledge of and acquaintance with the testator, he was asked:

"From these facts, state in your opinion whether or not he was of sound mind and disposing memory?"

The answer is: "He was not of sound mind and disposing memory."

The Court allowed the answer, so far as the statement that he was not of sound mind, but refused to allow, and sustained the exception, as to the question of disposing memory.

The question of what shall be the form of the inquiry to the witness, and what answer may be given by him on the point of mental capacity and soundness, at the time of the execution of the paper, or at any time before or after, where it is sought to set aside the will for want of capacity to make one, has been much discussed in the Courts of the United States and England, as appears from cases cited by Mr. Redfield, note 1, 141–2. In several of the States the rule is, that witnesses familiar with the testator, after stating the change which had taken

place in his mental condition, might also declare their opinions, founded on these facts, that the testator, from defect of understanding, was incapable of making a will, and that then the jury were to judge from the facts stated by him, as to the correctness of his opinion; and we may say, that there seems much sound reason in favor of this view, for as an opinion has to be formed by men, not experts, at least, to-wit, the jury, as to capacity of the testator to make a will, it would seem that the opinion of men familiar with him, when they state the facts on which it is based, would furnish an equally sound basis for the action of the jury, as the simple statement of the facts from which a jury, unacquainted, perhaps, with the testator, are to draw their conclusions. However, the question has been settled in Tennessee, by the case of *Gibson* v. *Gibson*, 9 Yer., 332, where it was held that although the witness might answer as to whether the party was "in his senses," that is, of sound mind, yet that he could not state whether the testator was capable of making his will.

The rules laid down in that case are familiar to the profession, and need not here be repeated, farther than the one applicable to the particular class of witnesses now under consideration; that is, witnesses who are not subscribing witnesses.

The question presented in the case of *Gibson* v. *Gibson* was also discussed in the case of *Nelson* v. *Moore*, 3 Head, 482. And the principle settled by the two cases is, that when the witness had had the

means of observing the testator's capacity, manner, peculiarities or deportment, that he may give his opinion as to the soundness or unsoundness of his mind. "Such judgment," says Judge Wright, in the case quoted, "approaches to knowledge, and is knowledge, so far as the imperfections of human nature will permit knowledge of these things to be acquired, and the result thus acquired should be communicated to the jury, because they have not had the opportunities of personal observation, and because in no other way can they effectually have the benefit of the knowledge gained by observation of others."

This decision, as well as the case in 9 Yer., is based on an approval of the case of *Clay* v. *Clay*, 2 Ired., 78. In that case, as stated in Judge Wright's opinion, 3 Head, the witness had no acquaintance with the donor, except from one occurrence.

Eleven years before the execution of the deed in dispute he had visited her for the purpose of writing her will; had received her directions on the subject, and wrote it. The witness said, at this time she appeared to him to be in good health, but he thought her intellect in the state usually termed childish.

The objection to this testimony was, that it gave the opinion of the witness upon the state of the donor's mind. This was held competent by the Supreme Court of North Carolina, and as we have said, this case has been followed by this Court in the two cases cited; and we have no question of the soundness of the principle. As a matter of course, the

Wisener & Brown, Executors, *v.* Maupin and Wife *et al.*

jury would weigh the testimony in connection with the means of observation of the witness, and his intelligence, qualifying him to form a judgment, but the evidence would clearly be competent.

Under these rules, we can see no error in the action of his Honor. The fact that the question and answers were in writing, in the form of a deposition, can make no difference in the duty of the Court to exclude from the jury an objection made, incompetent matter thus presented; nor could it authorize the Court to reject competent proof, because it was connected with that which was not competent, especially where it was readily separable, as in this case.

We come now to the objections made to the charge of his Honor to the jury. We deem it proper to say, that it is seriously objectionable in one general feature; that is, its extreme length and particularity, covering as it does, about eighteen pages. We refer to this, not as error, but as a practice that ought not to be encouraged, but reprobated by this Court. The Judge's charge to the jury should be a clear, concise statement of the principles of law applicable to the case; not an elaborate essay upon the questions presented. Such charge is better calculated to confuse and embarrass, than to direct and aid a jury in coming to their conclusion.

But passing from this to the points of objection as presented.

It is said, the Court erred in attempting to define *senile dementia,* or rather; that there is an entire

absence of a legal definition of this kind of mental capacity—the result of old age.   While there is want of accuracy in the statement of his Honor, "that *senile dementia* is usually said to be the consequence of old age, and in general, exists no where else." Yet this statement is entirely immaterial, a mere remark, that could have no possible bearing on the case.

In this connection his Honor said to the jury, in telling them the effect of loss of memory, and the forgetting the names of acquaintances, etc., that these were matters to be looked to, but not as controlling the question, the great point being, whether "in conversation about his affairs with his friends and relations, he evinced sufficient knowledge of both to dispose of the former with a sound judgment." The phrase, "with sound judgment," might not be strictly accurate, if there were no further explanation of his Honor's meaning in this connection, as it might be construed to refer to the correctness, or incorrectness, or propriety of the dispositions made by him, with reference to the objects of his bounty.

But this is evidently not the sense in which the word judgment is used by his Honor, but in the sense of a sound understanding of the dispositions made.  This is made clear by his subsequent statement to the jury, immediately following, and explanatory of the above remark.

He tells them substantially that the law does not look at the weakness of the body merely, nor to the

age of the testator, but to his capacity, and that he should have a competent understanding. He then tells the jury that neither old age or disease will affect the will, if he understood what he was doing, but they might be looked to by the jury in determining the question of testamentary capacity. The question being, as he says, "whether the testator at the time of making his will, knew and comprehended what he was doing." This is in accordance with the authorities, and no objection can be properly taken to it. See *Nailing,* Exr's, v. *Nailing,* 2 Sneed, 634.

The rule is thus given by Mr. Redfield, Vol 1, § 132, taken from a case in 39 Pa., St. R., 191 :

Though capacity to make a will may accompany a great degree of mental imbecility, yet in order to support a will so made, it must be shown that the testator, at the time of making the will, had an intelligent consciousness of the nature and effect of his act, a knowledge of the property he possessed, and an understanding of the dispositions he intended to make." Or as perhaps more fully expressed in the case of *Beanbins* v. *Cicotte,* 11 Mich., 459, quoted in a note, p. 130, by Mr. Redfield :

"The will is not valid unless the testator not only intends, of his free will, to make such a disposition, but is also capable of knowing what he is doing, of understanding to whom he is giving his property, and in what proportions, and whom he is depriving of it."

Again, it is objected that the Court erred in his charge to the jury on the amount of undue influences necessary to invalidate the will. The particular language objected to is, that the Court said: "The influence that will destroy or vitiate a will must be such as deprives the testator of his free agency and discretion."

On looking at the charge, we find this objection is based on a fragment only, taken out of the charge, that does not by any means give the real principle laid down by his Honor on this question, for he adds, as part of the sentence, and "constrain him to do what is against his will, what he is unable to refuse, or too weak to resist, and this influence must have been exercised, and in being at the time the will was made, or so near thereto that the jury will believe the influence existed at the time, and he acted under it.

We think this statement of the law is as strong in favor of plaintiffs as could be asked, and perhaps, if objectionable at all, it is that it is full strong language against the contestants.

The next error assigned is, on the language as quoted in brief—"old age alone does not constitute testamentary disqualifications, if he has a mind capable of acting rationally, and a memory sufficient in essentials is shown to 'have existed, and the will is consonant with definite and settled intentions, is not unreasonable in its provisions, and has been executed with fairness. While it is true that a man

may dispose of his property as he pleases, when he is shown to have capacity, and have acted freely, and the injustice or inequality of the will is no ground on which to declare, as a matter of law, that it is invalid. Yet, as a matter of evidence, such a fact as the injustice and unreasonableness of the provisions of a will may well be looked to, to arrive at the question, as to whether the will was or was not the result of fraud or undue influence, and not the dictates of the free act of the testator's own mind.

The rule is thus given by Swinburne, as cited by Mr. Redfield, Vol. 1, 520–52:

"It is certain Courts can not assume to measure, and to guard against any species of influence which may be brought upon the testator, to give his property in a particular direction. It is only that influence which deprives the testator of his free agency, and makes the will more the act of others than of himself, which will avoid it. Hence, any thing in the character of the will which renders it contrary to natural affection, or what the civil law writers denominate an undutiful testament, as where children or others entitled to the estate, in case of intestacy, are wholly disinherited; or if not wholly deprived of a share, it is given in such unequal portions as to indicate that it is due without any just cause, and wholly dependent on caprice, or over-persuasion, or deception, it must always excite apprehension of undue influence at the very least. This principle," adds Mr. Redfield, "does not include the idea, however,

that a testator has not the right to disinherit his children, even upon any ground satisfactory to himself. We think the weight of authority and sound principles are clearly in favor of the proposition we have laid down. See authorities cited by Redfield, Vol. 1, p. 374, §§ 14, 515, 517, note 22; *Kevill* v. *Kevill;* Court of Appeals; Ky. Law Reg., 6, 80.

On looking at the part of the charge cited, it will be seen that his Honor was giving the jury instructions on the question of the presumption of knowledge of the contents of the will by the testator, as well as the question of capacity or incapacity to make, as infirmity, old age, and defect of memory, and in this view the principle is, we think, strictly correct. It is quoted from Mr. Redfield, Vol. 1, p. 98, who cites it, with approval, from a New York case; *Maverick* v. *Reynolds*, 1 Redf., same Reps., 360.

The next one assigned is, that his Honor charged: "If the jury find from the proof that the will was not read to the testator, and he is illiterate, it must be shown that he knew its contents. This may be done by circumstances, as well as by direct proof. If he be illiterate, old, and diseased, it requires full and satisfactory proof that he knew the contents of the will."

The latter clause of the charge is especially objected to, and it is urged that this stringent rule only applies to cases where the draftsman takes a benefit under the paper. In cases of *Cox* v. *Cox,*

4 Sneed, 87, while the general rule is recognized, that in ordinary cases, where the testator is shown to be of competent capacity, the presumption of law would be, from his signing the paper, that he knew its contents. "But in cases of doubtful capacity, and where the testator is blind, or unable to read, more is required than the 'mere legal presumption, arising from the act of execution. In such cases, there must be proof, not only of formal execution of the will, but likewise of the testator's knowledge of its contents."

In this case, the draftsman was a subscribing witness, but took no interest under the will. We think the rule sound and approve it, and his Honor's charge conforms to the principle laid down. It is proper to remark, that the proof shows the testator to have been very old—upwards of 80—diseased, infirm, and unable to write his name.

It is next objected, that the Court erred in telling the jury that if the will was obtained by undue influence, it can not stand or be set up as a will; that it is void entirely, not only as to the persons obtaining it, but to all others.

While it might be conceded, that in some cases a will might be good in part and void in part, though we do not say how this may be, yet there is no error in the charge given by his Honor, as it is applicable to the whole will, and it must be admitted, that if the whole instrument were obtained by fraud or undue influence, it is not the

will of the testator, but of others, and ought not to stand. We can not speculate what would have been a testator's will, if left free to the dictates of his own judgment in such cases.

The plaintiff introduced and proposed to examine Mrs. Elizabeth Brinty, the wife of Benjamin Brown, who, since his death, had intermarried with Dr. Brinty. The record says she was offered as a witness "in support of the will." She was objected to by the contestants as incompetent, and the exception sustained. On the issue presented, as to whether the will had been obtained by fraud or undue influence, exerted by her over the old man in his lifetime, and after her marriage she was clearly incompetent, under repeated holdings of this Court. And so as to the question of soundness of mind, or capacity to make a will, she was equally incompetent, as she would be compelled to speak of the transactions and conduct coming under her observation by virtue of the marital relaton, and what occurred between husband and wife.

The principle on which we have uniformly ruled on this question is, that public policy, as well as a proper sense of propriety and regard for the confidences incident to the marriage relation, forbid that the wife, after the death of the husband, should be called on, or permitted to divulge in Court, the matters confided to her, or that came to her knowledge under the said trust involved in the marriage contract. This is in accordance with the principle of

the case, *Brewer* v. *Furgerson*, 11 Hum., 567, and we do not feel inclined to depart from it. If the party had sought to prove any matter occurring after the marriage, or any matter not within the rule, it should have been so presented to the Court; but as the facts appear in this record, we can see no error in the action of the Court on this point.

On the trial of the case, the plaintiffs produced a photograph, purporting to be a likeness of Benjamin Brown, the testator, which, on objection, was excluded from the jury. This is now assigned as error. We can see no principle on which it could have been relevant to the issue. There was no question of the identity of the deceased, nor could the picture presented, however accurate a likeness it might be, have thrown any light on the questions in issue, as to whether he was capable of making a will, nor whether it was obtained by fraud or undue influence. There was no error in this.

Lastly, it is insisted that there is no evidence to support the verdict, and that a new trial ought to have been granted for this cause. We can not undertake to go over in this opinion the immense mass of testimony presented on the part of each party bearing on the issues presented, and critically examine it. It suffices to say, that on the part of the contestants, there was a large amount of testimony tending to show that the old man was in his second childhood; that his memory had failed him; that his conversation was disconnected and flighty; in a word,

24—vol. 2.

that he was weak, very weak, both in body and mind. There was testimony tending to show that his young wife controlled him as a child; that he but did her bidding.

The proof shows that at the time of their marriage she could not have been more than about 25 or 27 years old, young, strong, vigorous, energetic, and probably, or we think certainly, married the old man in view of his property, and certainly for nothing else. It further shows, that he was about 80 years of age when she formed this most unnatural alliance with him, and that he was coarse, vulgar, illiterate, slovenly, and dirty in his habits, notoriously a miser, and certainly altogether unattractive in person and habits. (From all the facts, we think it. clear, beyond all question, that a young and respectable woman, in the prime and vigor of her maidenhood, sacrificed all her finer feelings, and sold herself for money, into a most unnatural alliance.)

Under such circumstances, we can not say the jury were not warranted in saying she would not likely have been thwarted of her purpose, and had obtained the will we find in this record. She evidently had the desire to secure his property, she had the means of attaining her end, if contestants are to be believed, and in the will we see the end attained. In a word, we can not say there is not much evidence on which the verdict may well be supported.

It is true, on the other hand, that the parties seeking to sustain the will have introduced a large

mass of testimony in favor of the opposite of the propositions we have above presented so much, that if the jury had found a verdict in favor of the will, we can not say we would have been certainly justified, under well settled rules, in setting aside such a verdict. But in such a case, it was the province of the jury to settle the weight of the testimony, and on which side was the preponderance. They have done so, and the Court below has refused a new trial, and we can not say that in this there is reversible error.

We therefore conclude that the judgment of the Court below must be affirmed.

---

TURNEY, J., delivered the dissenting opinion.

Some time in the year 1857, writings purporting to be the last will and testament, and codicil thereto, of Benjamin Brown, were admitted to probate in common form in the County Court of Bedford County. On the 5th day of July, 1859, Robert Brown and Robert C. Maupin and wife filed their petition in said Court, alleging . . . . that "the writing was not the last will and testament of Benj. Brown; that the same was obtained by fraud and undue influence. That Benj. Brown was *non compos mentis* at the time of the execution of the will; that he was imbecile and totally incompetent of making a will, and that the same lacks the legal requirements;" and praying . . . . that "the

probate in common form be set aside and recalled, and
the will certified to the Circuit Court of Bedford
County, where the same may be *probated* in solemn
form, and its validity tested in an issue *devisavit vel
non;*" concluding, "a copy of the will is herewith
tendered."

On the 6th of July, 1869, the County Court
made an order in the following words: "This cause
came to be heard this 6th day of July, 1869, upon
the petition of Robert S. Brown and Robert C.
Maupin and wife, *and a copy of a paper purporting to
be the last will of Benjamin Brown* being filed as part
of the petition for the petitioners, and the answer of
Wm. H. Wisener, Sr., and Wm. Brown, executors of
Benjamin Brown. And it appearing that a paper
writing purporting to be the last will and testament
of Benjamin Brown, deceased, in which said Wisener
and Brown are named as executors, was admitted to
probate in common form at the ——— term, 1857,
of this Court, and that said probate is now set aside
on the petition of said Brown and Maupin, that they
may contest the will in the Circuit Court of Bedford
County. It is ordered by the Court that this cause
be certified to the Circuit Court of Bedford County,
when a trial may be had on an issue *devisavit vel
non,*" etc., etc.

On the 15th day of July, 1869, the Clerk of the
County Court filed with the Clerk of the Circuit
Court a copy of the proceedings in the County Court,
consisting of a copy of the petition, including a copy

of the paper purporting to be the will, answer, bonds and decree, the certificate indicating the papers constituting the transcript.

On the 6th of January, 1870, the executors moved the Circuit Court to strike the cause from the docket for want of jurisdiction, which motion was discharged. And thereupon " the defendants moved the Court to compel the executors to *probate* in solemn form the alleged will of Benjamin Brown, deceased, and make up the issue of *devisavit vel non,* and thereupon the executors moved the Court for a *certiorari* to the County Court Clerk to certify the will and records *probated* in this cause, which is accordingly done."

No *certiorari* is shown to have issued.

On the 5th day of April, 1870, before " J. M. Phillips, Clerk," "Joseph H. Thompson makes oath that he was Clerk of the County Court of· Bedford County at the time the last will and testament of Benjamin Brown, deceased, was admitted to probate in common form in said County Court, and that as such he was the keeper and proper custodian of the records of said Court, including original wills and the probate and record of the same. That as such he *learned* the court-house of Bedford County was destroyed by fire in the month ·of March, 1863, or about that time, that the office of the Clerk of the County Court was kept in a room in said building, in which room all the records were kept, and that *most of the records* of said Court were destroyed, and among these thus destroyed was the desk containing

the records of wills and the files of original wills, and that he *verily believed* the original will of said Benjamin Brown and the records thereof were destroyed by said fire; he has *never seen either* since; he was Clerk when said will was proved in 1857, and continuously up to 1868. He further states that the certified copy of the said will and codicil included or mentioned in the issue in this case, purporting to be signed by him on the 10th day of June, 1857, is a true copy of said will and codicil, all in his own proper hand-writing."

We find in the record this paper:

"William Brown and W. H. Wisener, the executors named in the will and codicil of Benj. Brown, deceased, after it was produced to the County Court and proved in said Court, they *believe* it was destroyed with its record by the fire which consumed the court-house in Shelbyville in March, 1863. The copy produced was obtained by Wm. H. Wisener, Sr., immediately after the probate of the will. [Signed]

"WILLIAM BROWN,
"W. H. WISENER."

"Sworn to and subscribed before me, April 5th, 1870.              . "J. M. PHILLIPS, Clerk."

Under the orders of the Court of the 6th of January, 1876, the executors bring into Court the copy, and file the following declaration, viz.:

"And said executors say that said paper writing, of which the foregoing is a copy, is (or are) the

Wisener & Brown, Executors, *v.* Maupin and Wife *et al.*

last will and testament and codicil thereto of said Benjamin Brown, deceased, and this they are ready to verify."

To this are the usual pleas and issue thereon.

In this state of the Record, did the Circuit Court have jurisdiction to try the validity of the will? I think not. Admitting it to be a well-settled rule in this State that parties may by consent go to trial of an issue *devisavit vel non* upon a copy of the will, it is clear no such consent was given by the executors in this case.

On the contrary, we find them at the outset moving to strike the cause from the docket for want of jurisdiction. Then if a trial is to be had under the rules of law and practice, have these rules been conformed to ?

By Section 2173 of the Code it is provided: "And when the validity of any last will or testament, written or nuncupative, is contested, the County Court shall cause the fact to be certified to the Circuit Court, and send to said Court the *original* will," etc., etc.

By Section 2179: "If the original will be lost or mislaid, so that it can not be produced on the trial of the issue, but the *paper* has been copied into the pleading or spread upon the minutes of the Court, the Court may proceed with the trial of the issue in the same manner as if the original were in existence and before it."

It is readily seen that the section first cited con-

templates no loss or mislaying of the paper while in the custody of the County Court or its officers, and makes no provision for · such contingency.

It is as readily understood, the last section quoted has in view only the loss or mislaying after the paper has been sent to the Circuit Court. In this section are to be found the only instances in which the issue attempted to be presented here can be tried upon an abstract copy of the will in the absence of consent.

The fact that the copy had 'been inserted in the pleadings or been spread upon the minutes of the Court, made it a part of the Record of the Court, as well as of the cause, at a time when the original was in existence and could not be detached from, by omission, mistake or improper addition. Hence, the reason of the Legislature, for the passage of the law.

But it is insisted the original had been destroyed with the record of its probate by fire, and therefore a certified copy is the best and only secondary evidence.

To the assumption of destruction by fire, I answer we do not know legitimately from this Record that the court-house or the records in it were burned; true we find a paper purporting to be the affidavit of the Clerk of the County Court, but there is nothing connecting it with or identifying it as a part of the Record; it has no evidence upon it of ever having been filed, nor is it shown why, under what circumstances, nor whether in or out of term time it

Wisener & Brown, Executors, *v.* Maupin and Wife *et al.*

was made. It is sworn to before "J. M. Phillips, Clerk," without more, is, as far as we can see, voluntary and *ex parte*, and so of the affidavit of Wisener and Brown.

Suppose, however, we treat them as regular in manner, they are wholly wanting in substance. They show no evidence of such, and merely give the belief of affiants; the affidavits of the former Clerk only showing that he had learned, not that he knew of the burning of the court-house; but even were they perfect in substantial respects, it must be remembered that for about two years before they were made, Thompson had ceased to be the Clerk, and another had become the custodian of the records of the County Court, from whom we heard nothing. Beyond these defects is a more fatal objection still.

The copy called "a certified copy," but which is not as it appears in the Record, is not, though it were certified, the best secondary evidence, the original being burnt. That copy is the individual, private property of the executors, furnished by the Clerk for their guidance in the administration of the estate, and has nothing of the solemnity of a record promoting the purpose of this proceeding.

After the destruction of the original will, and the record of its probate and registration, the best evidence in this issue would have been the supplied record of such probate and registration because of its solemnity and more inviolable repository, in procuring

which a preserved copy ,of the will, sufficiently -identified, would be competent evidence.

The Circuit Court had no jurisdiction to supply the loss of the original will, it never having been filed in that Court. Code, 3097.

The motion to, strike from the docket, in my opinion, was well taken. The proceedings of the County and Circuit Court should be dismissed without prejudice. I am further of opinion the statement of facts by some of the witnesses was entirely too meagre to authorize an expression of opinion as to the capacity of the testator.